UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARELLA BRAUN + MARTEL LLP, <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL DEPOSIT INSURANCE CORPORATION, <br><br> Defendant. | Case No. 24-cv-01306-SI <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT** <br><br> Re: Dkt. No. 27 |

Before the Court is the motion by defendant Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank ("FDIC"), to dismiss and strike portions of plaintiff's complaint. Dkt. No. 27.[1] Plaintiff Farella Braun + Martel LLP opposes. Dkt. No. 19. For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART defendant's motion.

**BACKGROUND[2]**

Silicon Valley Bank ("SVB") "was the largest regional commercial bank in the San Francisco Bay Area" and was shut down by the California Department of Financial Protection on March 10, 2023. Dkt. No. 1 ("Compl.") ¶ 4. The FDIC was appointed as receiver for SVB. *Id.* Prior to being shut down, SVB had retained plaintiff for legal services regarding various transactional matters. *Id.* ¶ 12. Plaintiff agreed to perform legal services for a flat rate fee that

---

[1] Defendant's motion was originally filed at Dkt. No. 17. After reassignment to this Court, the motion was re-noticed at Dkt. No. 27.

[2] For the purposes of this motion to dismiss, the Court treats as true the factual allegations as stated in plaintiff's complaint and draws all reasonable inferences in plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

1  reflected a discount to its regular hourly rates. *Id.* ¶ 13. The FDIC was appointed as a receiver for
2  SVB on March 10, 2023 and thereupon assumed liability for claims against SVB. *Id.* ¶ 24.

3        As of March 10, 2023, SVB had failed to pay 17 outstanding invoices to plaintiff totaling
4  $211,025.72 and dating from September 2022 to June 2023. *Id.* ¶ 15. On July 6, 2023, plaintiff
5  timely filed a Proof of Claim with the FDIC pursuant to 12 U.S.C. § 1821(d), asserting a claim for
6  the fees and expenses that SVB had failed pay. *Id.* ¶ 17. On January 5, 2024, the FDIC partially
7  allowed plaintiff's Proof of Claim in the amount of $162,193.97 and partially disallowed the
8  remaining $48,831.75, "stating that it was '[n]ot proven to the satisfaction of the Receiver.'" *Id.*
9  ¶ 18. Plaintiff's counsel emailed the FDIC on January 11, 2024 regarding the disallowance and the
10 "FDIC responded, stating that . . . '[l]egal invoices without billing rates, billed hours, and itemized
11 lists of work done (with dates and description of work done) are disallowed.'" *Id.* ¶ 22. The FDIC
12 further stated that it would not agree to any request for administrative review of the disallowed
13 portion of the claim. *Id.* ¶¶ 20, 22.

14        On January 30, 2024, plaintiff's counsel provided supplemental invoices to the FDIC "with
15 the detailed time entries, billed hours, and billing rates FDIC asserted were missing from the original
16 notices." *Id.* ¶ 22. Plaintiff's counsel explained that the original invoices did not include this
17 detailed information because those invoices "reflected SVB's and [p]laintiff's agreement to perform
18 particular services at a reduced flat fee." *Id.* In a subsequent telephone conversation with plaintiff's
19 counsel, "the FDIC refused to change its position." *Id.* SVB allegedly never objected to any of
20 plaintiff's invoices included in the Proof of Claim. *Id.* ¶ 14.

21        Plaintiff brings this action pursuant to 12 U.S.C. § 1281 for judicial review of the partial
22 disallowance of plaintiff's claim for services rendered as counsel for SVB and for full allowance of
23 plaintiff's claim. *Id.* ¶¶ 1, 5. Plaintiff seeks a declaratory judgment declaring the extent to which
24 the FDIC is liable to plaintiff with respect to the Proof of Claims; applicable pre- and post-judgment
25 interest, cost of suit, and attorneys' fees; and reversal of the partial disallowance of plaintiff's Proof
26 of Claim. *Id.* ¶ 26.

27
28

**LEGAL STANDARD**

**I.      Federal Rule of Civil Procedure 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A pleading must contain allegations that have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Dismissal under Rule 12(b)(6) is proper when the complaint "lacks a cognizable legal theory" or "fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**II.     Federal Rule of Civil Procedure 12(f)**

Federal Rule of Civil Procedure 12(f) provides that a court may, on its own or on motion,

"strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that arises from litigating spurious issues by dispensing of those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). However, motions to strike are generally disfavored. *Rosales v. Citibank, Fed. Sav. Bank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). Generally, a motion to strike "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc*., 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party." *Id.*

**DISCUSSION**

Defendant brings the instant motion to dismiss plaintiff's claim for declaratory relief and to strike the complaint's request for relief relating to attorneys' fees incurred prior to suit and pre- and-post interest on any judgment. Dkt. No. 27 at 1. As plaintiff points out, at another point in its motion, defendant appears to also move to dismiss the request for attorneys' fees. *See id.* at 6. The court thus evaluates whether plaintiff's request for attorneys' fees should be stricken under Rule 12(f) or dismissed under Rule 12(b)(6).

I.  **Whether Plaintiff's Claim for Declaratory Relief Should Be Dismissed**

Defendant contends that the complaint is "void of any allegations whatsoever suggesting that SVB was indeed in a contractual relationship with [p]laintiff and that SVB failed to perform prior to the bank failing and FDIC taking over as receiver." Dkt. No. 27 at 8. Plaintiff responds that this argument misses the point because its "request for declaratory relief is based on [d]efendant's partial disallowance of the claim, not the contract between plaintiff and SVB," and defendant cites no legal authority that suggests that a plaintiff must plead privity of contract with the failed financial institution to file a declaratory relief claim against the FDIC as receiver. Dkt. No. 19 at 7. The Notice of Partial Allowance of Claim that plaintiff received from the FDIC states:

4

"Pursuant to 12 U.S.C. Section 1821(d)(6), if you do not agree with this disallowance, you have the right to file a lawsuit on your claim[.]" Dkt. No. 4, Ex. D.

The Court first addresses whether plaintiff must allege the existence of a written contract between it and SVB. 12 U.S.C. § 1821(d)(9)(A) states: "Except as provided in subparagraph (B) [which is not applicable here], any agreement which does not meet the requirements set forth in section 1823(e) of this title shall not form the basis of, or substantially comprise, a claim against the receiver or the Corporation." Section 1823(e) provides in general: "No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title . . . as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement" meets a list of requirements, including being in writing. 12 U.S.C. § 1821(e)(1). The Ninth Circuit has explained that § 1823(e) "codified the policy embodied in the *D'Oench, Duhme* [doctrine]," which "is a principle of equitable estoppel that permits bank examiners to rely on the records of a bank in evaluating the bank's financial condition, by protecting the bank authorities from suits founded on undisclosed conditions or deceptive documents." *Brookside Associates v. Rifkin*, 49 F.3d 490, 493 (9th Cir. 1995). The Ninth Circuit has further explained that:

> *D'Oench, Duhme* expresses a federal policy to protect the [FDIC] from misrepresentations concerning the assets of insured banks. When a debtor asserts a "secret agreement" not in the records of the bank, whether to avoid enforcement of a note or in a suit such as this one based on fraud in the inducement of an obligation, the *D'Oench, Duhme* policy favors the interests of bank examiners, as well as the agency that insures the bank, over debtors, who can protect themselves against harm by making sure all of the terms of their agreements are in writing.

*Id.* at 495.

The FDIC contends that a claim based on an oral agreement would not survive the FDIC's claims process, only a written contract executed by the failed bank. Dkt. No. 30 at 4. The FDIC refers the Court to two cases in support of its position.

In *Langley v. Federal Deposit Insurance Corporation*, the Supreme Court granted the defendants' petition for certiorari "on the issue whether, in an action brought by the FDIC in its corporate capacity for payment of a note, § 1823(e) bars the defense that the note was procured by fraud in the inducement even when the fraud did not take the form of an express promise." 484 U.S.

5

86, 90 (1987). The Court first determined the meaning of the word "agreement" in section 1821(e), finding that the common meaning of the word must be assigned to its usage if section 1823(e) "is to fulfill its intended purposes," which the Court then reviewed. *See id.* at 91-93. The Court next concluded that "neither fraud in the inducement nor knowledge by the FDIC is relevant to the section's application." *Id.* at 93. The Court ultimately concluded: "A condition to payment of a note, including the truth of an express warranty, is part of the 'agreement' to which the writing, approval, and filing requirements of 12 U.S.C. § 1823(e) attach. Because the representations alleged by [the defendants] constitute such a condition and did not meet the requirements of the statute, they cannot be asserted as defenses here." *Id.* at 96. The facts of *Langley* are not analogous to the present case, and the Court does not find that *Langley* provides a clear answer to whether plaintiff here must allege an "agreement" that meets the statutory requirements of § 1823(e).

In *MBIA Insurance Corporation v. F.D.I.C.*, the issue on an appeal of a motion to dismiss was "whether payments made by the [plaintiff] to investors in mortgage securitizations of a failed bank . . . constitute 'administrative expenses' entitled to priority" under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). 708 F.3d 234, 235 (D.C. Cir. 2013). The plaintiff had sued a third-party beneficiary of Pooling and Servicing Agreements ("PSAs") of a failed bank, alleging that the FDIC as conservator of the successor bank had "approved" the PSAs and then breached its obligations under those agreements, resulting in investor claims on plaintiff-issued insurance policies. *Id.* at 235. The court assessed the plaintiff's contention that its damages constitute "administrative expenses" entitled to priority under the statute because the FDIC had "approved" the PSAs within the meaning of the statute. *Id.* at 236. After an extensive statutory interpretation analysis, the court concluded that "contract approval demands a formal determination of necessity by the FDIC as Conservator or Receiver . . . and that a writing protects all interested parties, distinguishing 'approved' contracts from on-going agreements assumed and non-repudiated." *Id.* at 245. It further held that the plaintiff was not entitled to an "administrative expenses" distribution priority. *Id.* at 247. This case also does not provide guidance to the Court on whether plaintiff here must allege the existence of a written contract.

Defendants further contend that the Court may not "consider claims for declaratory relief

asserted against FDIC in its capacity as receiver, regardless of whether the agreement is in writing or not." Dkt. No. 30 at 5. In support, defendants point to *Sharpe v. F.D.I.C.*, 126 F.3d 1147 (9th Cir. 1997).

In *Sharpe*, the Ninth Circuit held that the plaintiff's damages claim was not affected by the 12 U.S.C. §1821(j) jurisdictional bar, "but the claims for recission and declaratory relief must fall under an exception to § 1821(j) to survive." *Id.* at 1154-55. Section 1821(j), "an anti-injunction section," provides that:

> Except as otherwise provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver.

12 U.S.C. § 1821(j). The court found that the "FDIC failed to perform its obligations under the contract" at issue (a settlement agreement) and went on to address whether the FIRREA "imposes any limitation on [the plaintiffs'] state law right to pursue the action." *Id.* at 1152-54. The court explained that section 1821(j) "bars restraint by the courts on the statutory powers of the FDIC when it acts as receiver" and "prevents courts from granting any equitable relief against the FDIC." *Id.* (citation omitted). There are "few exceptions to this jurisdictional bar," one of which is that the bar "does not extend to situations in which the FDIC as receiver asserts authority beyond that granted to it as receiver." *Id.* at 1154-55. Specifically, "FIRREA does not authorize the breach of contracts" and "does not preempt state law so as to abrogate state law contract rights." *Id.* at 1155. The FDIC "can escape the obligations of contracts, [but] it may do so only through the prescribed mechanism" of section 1821(e), which "allows the FDIC to disaffirm or repudiate any contract it deems burdensome and pay only compensatory damages." *Id.* Because "the FDIC did not act within its statutorily granted powers in breaching the [plaintiffs'] settlement agreement," the Court concluded that the plaintiff's claims for declaratory relief and recission were not barred by section 1821(j). *Id.* The Court does not find *Sharpe* dispositive on whether section 1821(j) bars plaintiff's claim for declaratory relief here.

*MBIA Insurance Corporation* held that the plaintiff's request for declaratory and injunctive relief based on untimely repudiation was barred by section 1821(j). 708 F.3d at 247. The plaintiff had sought an injunction regarding the FDIC's denial of its claims "against FDIC Corporate and

7

1  FDIC Receivers" and a declaratory judgment that the FDIC failed to repudiate a Pooling and
2  Servicing Agreement within a "reasonable period" as required by 12 U.S.C. § 1821(e)(2). *Id.* at
3  246-47. The court explained that the FDIC as receiver or conservator is authorized to "disaffirm or
4  repudiate any contract or lease . . . and therefore repudiation is properly viewed as a power of the
5  Corporation acting in such capacities." *Id.* at 247 (citations and internal quotation marks omitted).
6  "A court declaring a repudiation invalid would necessarily 'restrain or affect the exercise' of this
7  power by the FDIC and thereby contravene § 1821(j)." *Id.* Here, plaintiff is not asking the court to
8  declare a repudiation of a contract invalid but rather to review the FDIC's partial disallowance of
9  its claims.

10  Plaintiff contends that 12 U.S.C. § 1821(d)(6) is an exception to section 1821(j) that is
11  appliable here. The FDIC disagrees. Case law from around the country supports plaintiff's position.
12  The Eleventh Circuit has explained that "Congress contemplated the reality that the FDIC may err
13  in its determination of receivership claims and provided all claimants with the remedy of *de novo*
14  review in federal court of the FDIC's claims determination." *Bank of America Nat. Ass'n v. Colonial
15  Bank*, 604 F.3d 1239, 1244 (11th Cir. 2010) (citing 12 U.S.C. § 1821(d)(6) and (d)(7)(A)). Although
16  it held under the facts of that case that the plaintiff's claim was precluded by section 1821(j), it went
17  on to explain that the operation of section 1821(j) does not leave the plaintiff without a remedy,
18  because the claim could be pursued through the administrative claims process, and if not honored
19  there, the plaintiff "has a statutory right to *de novo* review in federal district court." *Id.* at 1246-47.
20  The Seventh Circuit has similarly held that "where the FDIC as receiver has disallowed a claim
21  pursuant to the administrative process outlined in Section 1821(d) . . . the judicial resolution of that
22  claim expressly permitted by that subsection should not typically run afoul of Section 1821(j)."
23  *Veluchamy v. F.D.I.C.*, 706 F.3d 810, 818 (7th Cir. 2013). And the D.C. Circuit has explained that
24  although section 1821(j) "does indeed effect a sweeping ouster of courts' power to grant equitable
25  remedies . . . serious due process concerns would be implicated if parties aggrieved by the FDIC's
26  actions as receiver were left entirely without remedies" and in many cases, "aggrieved parties will
27  have opportunities to seek money damages or other relief through the administrative claims process
28  provided in 12 U.S.C. § 1821(d), and their claims are ultimately subject to judicial review."

1  *Freeman v. F.D.I.C.*, 56 F.3d 1394, 1399 (D.C. Cir. 1995).

2  *Jafari v. F.D.I.C.*, No. 12cv2982-LAB (RBB), 2014 WL 1600441 (S.D. Cal. Apr. 18, 2014) is also instructive.  There, a California district court on a motion to dismiss distinguished cases finding that section 1821(j) prevents courts from granting equitable remedies against the FDIC on the grounds that those cases did not include a demand for monetary damages. *Id.* at *3.  The plaintiff wanted to hold the FDIC to its offer to reconvey a deed of trust for $135,000, which implied the return of $3,649,067.10 paid to the FDIC by a third party.  *Id.*  The court reasoned that the plaintiff's claims arguably sounded more in law than in equity, and that whether section 1821(j) barred the plaintiff's claims "isn't a matter of the labels affixed to them, but rather the actual relief those claims seek and an analysis of whether that relief would affect the FDIC's exercise of its powers." *Id.* at *4.  Although the plaintiff's equitable subrogation claim did "sound in equity and seek certain declaratory relief," the court determined that it was "ultimately a claim for money damages that follows on the heels of the FDIC's denial of [the plaintiff's] administrative claim." *Id.*  The same can be said here: although plaintiff seeks declaratory relief, it is ultimately seeking to recover the money that was disallowed in the FDIC's notices of partial disallowance.

Given this authority, the Court cannot conclude at this pleadings stage that it does not have jurisdiction to review the partial disallowance of plaintiff's claims.  Defendant's motion to dismiss plaintiff's claim for declaratory relief is therefore DENIED.

## II.     Plaintiff's Request for Pre- and Post-Judgment Interest

Defendant argues that sovereign immunity bars an award of interest against the FDIC. Dkt. No. 27 at 7.  Plaintiff does not address this argument in its opposition, instead arguing that a motion to strike under Rule 12(f) is not the appropriate place to raise this argument.  Sovereign immunity "generally bars an award of interest against a federal agency 'unless Congress affirmatively mandates that result[.]'" *Far West Fed. Bank, S.B. v. Office of Thrift Supervision-Dir.*, 119 F.3d 1358, 1366 (9th Cir. 1997) (quoting *Library of Congress v. Shaw*, 478 U.S. 310, 316 (1986)); *see also Battista v. F.D.I.C.*, 195 F.3d 1113, 1120 (9th Cir. 1999) (confirming that *Far West* held "that sovereign immunity bars an award of interest against the FDIC"). "Congress has never expressly

1    waived FDIC's immunity against prejudgment interest" but there is an exception when the
2    government agency has "assumed the status of a commercial enterprise." *Far West*, 119 F.3d at
3    1366. Unlike some other agencies such as the Postal Service, "the FDIC operates as a governmental,
4    regulatory entity, not as a private commercial enterprise." *Id.* "[B]ecause FDIC is not a commercial
5    entity and because Congress has not explicitly waived its immunity against interest, FDIC is not
6    subject to a prejudgment interest award." *Id.* at 1367.

7    Although it may not be the perfect place procedurally to raise the sovereign immunity
8    argument, it is clear under the above-mentioned authority that sovereign immunity bars an award of
9    interest against the FDIC. The function of a 12(f) motion to strike is served by addressing this issue
10   at this time. The Court therefore GRANTS FDIC's motion to strike plaintiff's request for pre- and
11   post-judgment interest. *See Delino v. Platinum Cmty. Bank*, No. 09-CV-00288-H (AJB), 2010 WL
12   11508574, at *3 (S.D. Cal. June 9, 2010) (granting motion to strike the plaintiff's request for pre-
13   and post-judgment interest against the FDIC based on sovereign immunity).

### III. Plaintiff's Request for Attorneys' Fees

The FDIC contends that plaintiff's "claim for attorneys' fees is without merit" and that plaintiff points to no provision of federal law that entitles it to attorneys' fees. Dkt. No. 27 at 6. Plaintiff responds that "requests made in the prayer for relief are not considered part of the statement of the claim . . . when tested" under Rule 8. Dkt. No. 19 at 6.

> A leading treatise explains that:
> The sufficiency of a pleading is tested by the Rule 8(a)(2) statement of the claim for relief and the demand for judgment is not considered part of the claim for that purpose. Thus, the selection of an improper remedy in the Rule 8(a)(3) demand for relief will not be fatal to a party's pleading if the statement of the claim indicates the pleader may be entitled to relief of some other type.

Wright & Miller, Federal Practice and Procedure § 1255 (3d ed. 2004). The "test of a complaint pursuant to a motion to dismiss lies in the claim, not in the demand." *Palantir Technologies, Inc. v. Palantir. net, Inc.*, No. C 10-04283 CRB, 2011 WL 3047327, at *3 (N.D. Cal. July 25, 2011) (citation omitted). Here, the availability of an award of attorneys' fees to plaintiff does not "control or even pertain to the sufficiency of any claim." *Oppenheimer v. Sw. Airlines Co.*, No. 13-CV-260-

IEG BGS, 2013 WL 3149483, at *3 (S.D. Cal. June 17, 2013) (holding that requests for punitive damages provide no basis for dismissal under Rule 12(b)(6)). The Court therefore DENIES defendant's motion to dismiss plaintiff's request for attorneys' fees.

Additionally, the Court has reviewed the cases defendant cites in its briefing and does not find that these cases support a position that attorneys' fees against the FDIC are always precluded as a matter of law. For example, in *Federal Deposit Ins. Corp. v. Meo*, the Ninth Circuit reversed a district court decision and remanded "for determination of reasonable attorneys' fees to be awarded Meo against FDIC." 505 F.2d 790, 793 (9th Cir. 1974). Additionally, in *Sharpe*, the Ninth Circuit, while noting that the FDIC's sovereign immunity barred an award of prejudgment interest, found that it was "unable to determine the attorney's fees and costs due" to the plaintiff based on its consideration of the record. 126 F.3d at 1154.

The Court likewise DENIES defendant's motion to strike the request for attorneys' fees. In *Whittlestone, Inc. v. Handi-Craft Co.*, the Ninth Circuit held that "Rule 12(f) . . . does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." 618 F.3d 970, 974-75 (9th Cir. 2010). The defendant had argued that the plaintiff's claim for lost profits and consequential damages in a breach of contract suit should be stricken from the complaint because such damages are precluded as a matter of law. *Id.* at 972, 974. The court held that this argument was better suited for a Rule 12(b)(6) or Rule 56 motion, reasoning that the defendant's 12(f) motion "was really an attempt to have certain portions of [the plaintiff's] complaint dismissed or to obtain summary judgment against [the plaintiff] as to those portions of the suit." *Id.* at 974. The court further reasoned that "[w]ere we to read Rule 12(f) in a manner that allowed litigants to use it as a means to dismiss some or all of the pleading . . . we would be creating redundancies within the Federal Rules of Civil Procedure . . . ." Especially given that defendant has not adequately supported it position that "the FDIC, when appointed as receiver over a failed bank, cannot be liable for attorneys' fees as a penalty," the Court agrees with plaintiff that it would be inappropriate to strike its request for attorneys' fees at this pleadings stage. *See* Dkt. No. 27 at 5.

**CONCLUSION**

For the forgoing reasons and for good cause shown, the Court hereby DENIES defendant's motion to dismiss plaintiff's claim for declaratory relief. The Court GRANTS defendant's motion to strike plaintiff's request for pre- and post-judgment interest from the complaint. The Court DENIES defendant's motion to dismiss and strike plaintiff's request for attorneys' fees.

**IT IS SO ORDERED**.

Dated: August 28, 2024

SUSAN ILLSTON
United States District Judge